```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

IN RE: MICHAEL CALABRESE,        :
                                 :  Appeal from Bankruptcy
         Appellant.              :  Case No. 10-6583
                                 :
                                 :  **OPINION**

**APPEARANCES:**

NICHOLAS S. HERRON
LAW OFFICES OF SEYMOUR WASSERSTRUM
205 W. LANDIS AVE.
VINELAND, NJ 08360
*Attorney for Appellant*

MARIKAE G. TOYE
DIVISION OF LAW
R.J. HUGHES JUSTICE COMPLEX
25 MARKET STREET
P.O. BOX 106
TRENTON, NJ 08625
*Attorney for State of NJ, Division of Taxation*

DONNA L. WENZEL
ISABEL C. BALBOA
CHERRY TREE CORPORATE CENTER
535 ROUTE 38
SUITE 580
CHERRY HILL, NJ 08002
*CHAPTER 13 Standing Trustee*

**HILLMAN, District Judge**

   **I.   INTRODUCTION**

   Before the Court is an appeal from an Order Denying Debtor's Motion to Expunge or in the Alternative to Reclassify ("Order") entered on November 17, 2010, by the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court"). For the reasons expressed below, the Order entered by the Bankruptcy

Court will be affirmed.

## II. BACKGROUND

Appellant had conducted business under the trade name "Don's What a Bagel, Inc." which business filed for bankruptcy under Chapter 11 on February 9, 2009. Unable to confirm a Chapter 11 plan of reorganization, the Bankruptcy Court ordered Chapter 7 liquidation on April 19, 2010. Appellant was unable to derive any funds from the business and sought relief by filing for individual Chapter 13 Bankruptcy protection on January 18, 2010. The State of New Jersey filed a secured proof of claim that was subsequently amended on August 12, 2010.

Central to this appeal is the amended proof of claim filed by the State of New Jersey which states that Appellant owes sales taxes for the time period of 2003 to 2009. The sales taxes are monies collected from Appellant's customers at the time of sale and owed to the State as required by state law. Appellant argues that the sales taxes are "excise taxes" and, therefore, dischargeable under the Bankruptcy Code after three years. The State argues that the taxes are "trust fund" taxes and, therefore, not dischargeable under Bankruptcy.

The Bankruptcy Court held a hearing on September 27, 2010, and subsequently instructed the parties to file supplemental briefing. The Bankruptcy Court held a telephonic hearing on November 1, 2010, at which time the Court found that the sales and usage taxes owed by Appellant are trust fund taxes pursuant

to 11 U.S.C. § 507(a)(8)(c) rather than excise taxes under 11 U.S.C. § 507(a)(8)(e).  The Bankruptcy Court entered an order on November 17, 2010 stating that the sales tax liability owed by Appellant on behalf of Don's What a Bagel, Inc., in the amount of $56,679.78, is non-dischargeable.

Appellant filed a timely appeal of the Order entered by the Bankruptcy Court.

### III.  JURISDICTION

The Order entered on November 17, 2010 is a final, appealable order.  This Court exercises mandatory jurisdiction to hear appeals from final orders of bankruptcy judges pursuant to 28 U.S.C. § 158(a)(1).

### IV.  STANDARD

On appeal from Bankruptcy Court, factual disputes are governed by the clearly erroneous standard.  See In re Continental Airlines, 203 F.3d 203, 208 (3d Cir. 2000); In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989).  Legal conclusions are given plenary review.  Id.; see also In re McKeesport Steel Castings Co., 799 F.2d 91, 93 (3d Cir. 1986).  The parties do not dispute the underlying facts.  The issue turns on a question of law and, therefore, we apply plenary review regarding the appeal.

### V.  DISCUSSION

This appeal requires interpretation of Section 507(a) of the Bankruptcy Code which prioritizes creditors' claims,

particularly, item number eight, which permits allowed unsecured claims of governmental units under certain conditions.  See 11 U.S.C. § 507(a)(8).

Appellant argues that the State's claim for sales taxes falls under section 507(a)(8)(e), which permits unsecured claims of governmental units, only to the extent that such claims are for an "excise tax" on:

> (i) a transaction occurring before the date of the
> filing of the petition for which a return, if
> required, is last due, under applicable law or
> under any extension, after three years before the
> date of the filing of the petition; or
> (ii) if a return is not required, a transaction
> occurring during the three years immediately
> preceding the date of the filing of the petition;

See 11 U.S.C. § 507(a)(8)(e).

Appellant argues that sales taxes are "excise taxes" and, therefore, dischargeable after three years pursuant to section 507(a)(8)(e).

Conversely, the State argues that the sales taxes are "trust fund" taxes and fall under section 507(a)(8)(c), which permits unsecured claims of governmental units only to the extent that such claims are for "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity."  See 11 U.S.C. § 507(a)(8)(c).  There is no three year limitation under subsection (c), thereby resulting in the full claim being nondischargeable.

The Bankruptcy Court ruled in favor of the State and held that sales taxes are trust fund taxes and, therefore,

nondischargeable in Bankruptcy.  Appellant argues on appeal that treating sales taxes as trust fund taxes violates the goal of relieving a debtor from the weight of oppressive indebtedness and of providing a debtor in bankruptcy a "fresh start."  See <u>Ins. Co. Of N. America v. Cohn (In re Cohn</u>, 54 F.3d 1108, 1113 (3d Cir. 1995).  Also, treating sales taxes as trust fund taxes requires a broad reading of the statute which violates the standard that priority under the tax code should be founded on a clear statutory purpose and narrowly construed. See <u>In re Continental Airlines, Inc.</u>, 148 B.R. 207, 211 (Bankr. D. Del. 1992).

   Appellant argues that since the statutory language of Section 507(a)(8)(c) is silent as to whether it includes "sales" or "usage" taxes, that there is no clear purpose to include such taxes.  Appellant also argues that the Bankruptcy Court conceded that it could be interpreted in a "myriad" of ways, thus committing reversible error.  Moreover, Appellant argues that granting priority status to the State is inconsistent with the policy of equality of distribution.

   There is no case law in this District interpreting whether sales taxes are excise taxes or trust fund taxes under the Bankruptcy Code.  The Bankruptcy Court relied upon decisions by the Second Circuit, in <u>In re DeChiaro</u>, 760 F.2d 432 (2nd Cir. 1985), and by the Ninth Circuit in <u>In re Shank</u>, 792 F.2d 829, 832 (9th Cir. 1986).  Both Courts held that sales taxes collected

from third parties to be paid to the State should be treated as trust fund taxes under 11 U.S.C. § 507(a)(8)(c).

The Second Circuit began its discussion with a review of the treatment of tax debts under the former bankruptcy Act to determine Congress's intent when it enacted the 1978 Code provisions.  In re DeChiaro, 760 F.2d at 434.  The Court found that in 1966, Congress changed its long-standing position that tax debts were not dischargeable, and permitted most tax debts more than three years old to be discharged.  Id. (citing Section 17a(1) of the Bankruptcy Act of 1898, ch. 541, § 17a(1), 30 Stat. 544, 550 (formerly codified as amended at 11 U.S.C. § 35(a)(1)) (repealed 1978); Act of July 5, 1966, Pub.L. No. 89-496, § 2, 80 Stat. 270).  The Court noted that a proviso was added by the 1966 amendment leaving certain tax debts nondischargeable even though the tax debt was more than three years old, one of which was a trust fund tax.  Id. (citing Act, § 17a(1)(e)).

The Second Circuit discussed that section 17a(1)(e) excepted from discharge, taxes the debtor "has collected or withheld from others."  Id.  The Court stated that "Congress added the trust fund tax exception to the 1966 amendment in response to the Treasury Department's argument that a debtor should not be relieved of his obligation for taxes he had collected from third parties but had not paid over to the taxing authority."  Id. (citing H.R.Rep. No. 372, 88th Cong., 1st Sess. 5 (1963); S.Rep. No. 114, 89th Cong., 1st Sess. 6 (1965)).  The Court noted that

6

the definition for trust fund tax did not include "sales taxes." Rather, the primary example used for such a tax was a withholding tax collected by an employer from his employees. Id. Nonetheless, the Court thought the history strongly suggested that Congress did not intend to limit the section 17a(1)(e) trust fund exception to just withholding taxes, but to encompass taxes that "employers and *other persons* ... have collected ... from third parties." Id. (citing H.R.Rep. No. 372, supra, at 6 (reprinting letter from Assistant Secretary of Treasury to Chairman of House Judiciary Committee) (emphasis added in original); S.Rep. No. 114, supra, at 10).[1]

In their discussion of The Bankruptcy Reform Act of 1978, the Second Circuit noted that the House and Senate each drafted significantly different versions of section 507 in their treatment of trust fund and excise taxes. Id. at 434-35. The differences between the House and Senate were summarized by the Court:

---

[1] Appellant disagrees with the Court's recitation of the legislative history surrounding the 1966 amendments since the later 1978 Bankruptcy Act "fundamentally restructured bankruptcy law." See Begier v. Internal Revenue Service, 496 U.S. 53, 58 (1990). Appellant's view is short-sighted. Prior enactments, even if later changed, can shed light or provide context to a statutory provision. See Hayden v. Pataki, 449 F.3d 305, 315 (2nd Cir. 2006)(finding that broad language could include certain provisions if read without the benefit of context and background assumptions supplied by other statutory and Constitutional wording, by history, and by the manifestations of intent by Congress at the time of the statute's enactment and thereafter). This Court finds the historical perspective provided in DeChiaro and in Shank to be well-reasoned.

> Under the House bill, the trust fund tax provision covered only 'taxes required to be withheld from wages, salaries, commissions, dividends, interest, or other payments that were paid by the debtor.' H.R. 8200, 95th Cong., 1st Sess. § 507(6)(C) (1977), reprinted in App. 3 Collier on Bankruptcy (15th ed. 1985). The House bill also had a provision covering 'excise taxes.' Id. § 507(6)(E). Under the House version, a discharge was not available for withholding taxes that became due within two years preceding bankruptcy or for excise taxes on transactions occurring within one year of bankruptcy. The Senate bill, on the other hand, included a trust fund tax provision not limited to withholding taxes. Rather, the Senate bill contained a provision, similar to section 17a(1)(e), that excepted from discharge a tax 'required to be collected or withheld' no matter how stale the debt. S. 2266, 95th Cong., 2d Sess. § 507(a)(6)(C) (1978), reprinted in App. 3 Collier on Bankruptcy, supra. The Senate bill had no provision explicitly covering excise taxes.
>
> The section ultimately enacted into law contained the Senate's version of the trust fund tax provision and the House's version of the excise tax provision (though changing the time limitation on nondischargeable excise taxes from one to three years).

Id. at 435.

The Second Circuit found that the statutory language created "an overlap between the provisions for trust fund and excise taxes." Id. The Court held that "the overlap between these provisions must be resolved by holding that Congress intended to differentiate between two categories of excise taxes and that the trust fund tax provision excepts from discharge those excise taxes required to be collected from third parties." Id. The Court stated it found nothing to indicate that Congress intended to change the policy reflected in prior law concerning sales

8

taxes collected from others.  Id.  It also noted that "in proposing its version of the trust fund tax provision, the Senate intended to include in the trust fund category excise taxes that 'a seller of goods or services is required to collect from a buyer and pay over to a taxing authority.'" Id. at 435-36. (citing S.Rep. No. 989, 95th Cong., 2d Sess. 71 (1978) (report of Senate Judiciary Committee), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5857; see S.Rep. No. 1106, 95th Cong., 2d Sess. 15-16 (1978) (report of Senate Finance Committee)).  The Second Circut found this history persuasive "since the compromise version rejected the House's limited trust fund tax provision in favor of the Senate's broader language."  Id. at 436.

    The Second Circuit did acknowledge that some remarks lent support to the debtors' position, particularly: "'All Federal, State or local taxes generally considered or expressly treated as excises ..., including sales taxes ...' are dischargeable under the excise provision."  Id. (citing 124 Cong.Rec. 34016 (1978) (remarks of Senator DeConcini, Senate subcommittee chairman), reprinted in 1978 U.S.Code Cong. & Ad.News 6505, 6567; 124 Cong.Rec. 32416 (1978) (remarks of Representative Edwards, House subcommittee chairman), reprinted in 1978 U.S.Code Cong. & Ad.News 6436, 6498).  Nevertheless, the Court rejected the position that "the excise tax provision was intended to carve out an exception to the trust fund tax provision."  Id.

9

The Ninth Circuit also faced the issue of whether liability for a sales tax, required by state law to be collected by sellers from their customers, is governed by the "trust fund" tax or "excise" tax provisions of the Bankruptcy Code in In re Shank, 792 F.2d 829 (9th Cir. 1986). The Ninth Circuit went through a similar review of the 1966 amendment to the Bankruptcy Act as well as the 1978 enactments of Section 507. The Ninth Circuit also remarked that the House and Senate versions were very different, and the version of subsection (c) ultimately adopted was the Senate version, i.e., "tax required to be collected or withheld from others and for which the debtor is liable in any capacity ..." Id. at 831.

The Ninth Circuit noted that subsection (c) was accompanied by the Joint Statement of Congressman Edwards and Senator DeConcini, which stated:

> Taxes which the debtor was required by law to withhold or collect from others and for which he is liable in any capacity, regardless of the age of the tax claims. This category covers the so-called "trust fund" taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employees' share of social security taxes.

Id. at 832 (citing 124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, § 507 at 248-49). The Court noted that "the reference to collected excise taxes in the Senate Report was, intentionally or unintentionally, deleted from the Joint Statement." Id.

10

Comparing subsection (c) with subsection (e), the Court acknowledged that the House version of subsection (e) was essentially the version enacted with the difference that excise tax debts were dischargeable if older than three years (instead of one year). The House Report does not define "excise tax" but the joint statement of Edwards and DeConcini defines excise taxes as including the following:

> All Federal, State or local taxes generally considered by this category, including sales tax, estate and gift tax, gasoline and special fuel taxes, and wagering and truck taxes.

Id. (citing 124 Cong.Rec. 32,416 (1978), reprinted in A. Herzog & L. King, supra, § 507 at 250).

The Ninth Circuit, like the Second Circuit, recognized the overlap in the two subsections, and also determined that Congress had two different types of sales tax liability in mind: "those owed personally by a retailer and those incurred by a retailer's customers which are collected by the retailer under the authority of the state, held in trust, and then remitted by the retailer to the state." Id. The Ninth Circuit felt this interpretation was supported by public policy considerations because if an obligation to pay sales tax can be discharged by a bankruptcy filing three years after the transaction giving rise to the tax, then it would create an incentive to default. Id.

Appellant disagrees with the reasoning of the Second and Ninth Circuits, and with the Bankruptcy Court's reliance on these

11

decisions in reaching its decision not to discharge Appellant's sales tax debt under Section 507(a)(8)(e).  Appellant argues that the Bankruptcy Court should not have relied on these cases, and instead should have conducted its analysis based on the plain meaning of the words in the statute.  Appellant states that the Bankruptcy Court failed to give the terms "trust fund tax" or "excise tax" their ordinary and normal meanings.

Appellant states that the term "trust fund tax" is not defined by the Bankruptcy Code, or by Black's Law Dictionary, and therefore provides a definition from the Internal Revenue Service.  The term "trust fund tax," however, is not part of the statutory language.  It is part of the Joint Statement of DeConcini and Edwards.  As such, it provides legislative intent, but cannot be defined as *words of the statute*.  In fact, it is more telling that Congress did not use the term "trust fund taxes" in the words of the statute.  Rather, a more expansive definition was used suggesting that Congress meant for taxes under that subsection to cover all taxes which are held in trust.  If Congress meant to limit subsection (c) to just trust fund taxes as defined, then they could have done so in the language of the statute.  See Rea v. Federated Investors, 431 B.R. 18, 22 (W.D.Pa. 2010) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

exclusion.") (citing Russello v. U.S., 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438, 452-53, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002)).

The term "excise tax," however, is part of the statute, but is not defined in the bankruptcy code. See U.S. v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 116 S.Ct. 2106, 2108 (1996). Appellant provides a definition of "excise tax" from Black's Law Dictionary as: "[a] tax on the manufacture, sale, or use of goods (such as a cigarette tax) or on the carrying on of an occupation or activity (such as a license tax or an attorney occupation fee)." This definition of excise tax comports with the Joint Statement of DeConcini and Edwards, which also makes reference to "sales tax" in the definition of excise tax. Thus, we find that the ordinary meaning of excise tax includes "sales tax." However, this does not solve the problem of the two subsections overlapping in meaning since the definition of excise tax does not specifically exclude sales taxes that are held in trust.

Appellant relies on the legislative history and argues that the Bankruptcy Court did not undertake an independent review of the legislative history leading up to the passage of Sections 507(a)(8)(c) and (e) in 1978. Appellant highlights the fact that Congress was unable to hold a conference and, therefore, Senator DeConcini and House Representative Edwards met to reach compromises on the differences between the two bills and their

13

statements have been treated as persuasive evidence of Congressional intent.  Appellant states that DeConcini and Edwards stated that the category of taxes covered under subsection (c) includes "trust fund taxes, that is, income taxes which an employer is required to withhold from the pay of his employees, and the employee's share of social security taxes." Appellant also cites to the remarks of DeConcini and Edwards that "excise tax" was to include "[a]ll Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes and wagering and truck taxes." Appellant argues that based on the statutory language and legislative history, that Congress intended all sales taxes to be excise taxes dischargeable under Section 507(a)(8)(e).

   Upon review of the statutory language and the legislative history, it is clear that there is overlap between subsection (c) and (e) with regard to sales taxes.  Subsection (c) covers all taxes "required to be collected or withheld."  This definition would include sales taxes collected from the customer, held for the State, and then paid as a tax to the State.  The comments of DeConcini and Edwards regarding subsection (e), however, include that the statement that excise taxes include sales taxes, thus creating an overlap.

   The Courts in <u>DeChiaro</u> and <u>Shank</u> understood this overlap to mean that Congress had two types of sale taxes in mind, and we

14

agree with their reasoning.[2] Although the term "sales tax" is used in statements by DeConcini and Edwards for "excise tax," there is a difference between a sales tax that is paid directly to the State, and a tax paid by a third party at the time of sale, held in trust, and obligated to be paid over to the State. This explanation of treatment of the two types of sales taxes provides meaning to both sections. See United Steelworkers of America, AFL-CIO-CLC v. North Star Steel Co., Inc., 5 F.3d 39, (3d Cir. 1993) (citing canons of statutory construction that "[c]ourts should avoid a construction of a statute that renders any provision superfluous" and "a court should avoid an interpretation of a statute that would lead to absurd or unreasonable results.") (citations omitted).

The Court must also look to the purpose behind the words in the statute to provide meaning and to ensure that Congress's intention is being carried out. See Reorganized CF & I Fabricators, 518 U.S. at 213 ("In every case in which the Court considered whether a particular exaction called a 'tax' in the statute creating it was a tax for bankruptcy purposes, the Court

---

[2] We recognized that other courts that have considered this issue have held that sales taxes are excise taxes and, therefore dischargeable after three years pursuant to the Bankruptcy Code. See In re Tapp, 16 B.R. 315 (Bankr. D. Alaska 1981); In re Boyd, 25 B.R. 1003 (Bankr. S.D. Ohio 1982). However, we find these cases unpersuasive since they did not address the argument that Congress had two different types of sales taxes in mind, one paid directly by the debtor, and one collected by the debtor from third parties and held in trust for the State.

looked behind the label and rested its answer directly on the operation of the provision.") (citing United States v. New York, 315 U.S. 510, 514-517, 62 S.Ct. 712, 714-716, 86 L.Ed. 998).  The purpose behind collecting a sales tax from customers at the time of sale is to pay such taxes to the State.  Thus, a sales tax collected by a third party and owed to the State pursuant to state law is a tax clearly held in trust and nondischargeable under 11 U.S.C. § 507(a)(8)(c).

### IV. CONCLUSION

Accordingly, the Bankruptcy Court was correct in its application of law to the facts in this case.  Therefore, the final order of the Bankruptcy Court will be affirmed.

An Order will be entered consistent with this Opinion.

                                          S/Noel L. Hillman
                                          NOEL L. HILLMAN, U.S.D.J.

Dated:    September 13, 2011

At Camden, New Jersey